O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLON CHOU, | Case No. ED CV 12-376-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

## INTRODUCTION

On March 13, 2012, plaintiff Solon Chou filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of a period of disability and Disability Insurance Benefits ("DIB").  Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision:  (1) whether the Administrative Law Judge ("ALJ") properly found that plaintiff did not have a

severe mental impairment; (2) whether the ALJ provided specific and legitimate reasons for rejecting a treating physician's opinion; and (3) whether the ALJ provided clear and convincing reasons for discounting plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("Pl. Mem.") at 9-17; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-10.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly determined that plaintiff did not have a severe mental impairment, failed to provide specific and legitimate reasons for rejecting the treating physician's opinion, and improperly discounted plaintiff's credibility.   Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 60 years old on the date of his July 27, 2010 administrative hearing, appears to have completed his secondary education.  AR at 65, 108, 113, 148.  His past relevant work includes employment as a cook. *Id.* at 145.

On June 13, 2008, plaintiff filed an application for DIB and a period of disability, alleging an onset date of August 1, 2007 due to diabetes, high blood pressure, high cholesterol, memory loss, bleary vision, nervousness, numbness on the right leg, and back problems. *Id.* at 140, 144.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 90-93, 98-103, 105-06.

On July 27, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 61-87.  Victoria Rei, a vocational expert, also

provided testimony.  *Id.* at 76-86.  On August 18, 2010, the ALJ denied plaintiff's claim for benefits.  *Id*. at 17-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 1, 2007, the alleged onset date.  *Id.* at 19.

At step two, the ALJ found that plaintiff suffered from the following severe impairments:  diabetes mellitus and joint pain.  *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings").  *Id.* at 21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with moderate pain, which could be controlled by medications without significant side effects.  *Id.*

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work.  *Id.* at 23.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform other work "existing in significant numbers in the national economy," including short order cook.  *Id.* at 23.  Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act.  *Id.* at 24.

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

The decision of the ALJ stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

## DISCUSSION

### A.    The ALJ Erred at Step Two

Plaintiff contends that the ALJ erred at step two when he concluded that plaintiff did not have a severe mental impairment.  Pl. Mem. at 9-13.  Specifically, plaintiff argues that in reaching his step two determination, the ALJ improperly rejected the uncontradicted opinion of consultative psychologist, Dr. Jeannette K. Townsend, but failed to provide clear and convincing reasons for doing so.  *Id.* at 10-13.  The court agrees.

At step two, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920 (a)(4)(ii).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account."  *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  An impairment is "not severe" when the impairment would have no more than a minimal effect on a claimant's ability to work.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3.

Here, the ALJ determined that plaintiff had the medically determinable mental impairment of depressive disorder, but concluded that it was not severe based on his finding that plaintiff only had mild restrictions in daily living, social functioning, and with concentration, persistence or pace.  *Id.* at 19-20.  In finding that plaintiff had a non-severe mental impairment, the ALJ expressly rejected the opinions of Dr. Townsend and Dr. G. Johnson.  *Id.* at 21.

1   The ALJ erred at step two.  Under a de minimis test, plaintiff had a severe

2   mental impairment.  Dr. Townsend assessed a GAF score of 50 and Dr. Johnson

3   concluded that plaintiff had some moderate mental limitations.  *Id.* at 227-29, 264;

4   *see, e.g., Tomlinson v. Astrue*, No. 11-7705, 2012 WL 3779049, at *7 (C.D. Cal.

5   Aug. 31, 2012) (GAF scores of 45 and 47 indicated a severe impairment); *Zaldana*

6   *v. Astrue*, No. 11-7728, 2012 WL 3307007, at *5 (C.D. Cal. Aug. 13, 2012) (GAF

7   score of 60, as well as physician's opinions of moderate limitations, indicated a

8   severe mental impairment).  Thus, in order to conclude that plaintiff did not have a

9   severe mental impairment, the ALJ had to properly reject both medical opinions,

10  which the ALJ failed to do.

11      In determining whether a claimant has a medically determinable

12  impairment, among the evidence the ALJ considers is medical evidence.  20

13  C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish

14  among three types of physicians:  (1) treating physicians; (2) examining

15  physicians; and (3) non-examining physicians.[2]  20 C.F.R. § 404.1527(c), (e);

16  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  "Generally, a

17  treating physician's opinion carries more weight than an examining physician's,

18  and an examining physician's opinion carries more weight than a reviewing

19  physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20

20  C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally

21  given the greatest weight because the treating physician is employed to cure and

22  has a greater opportunity to understand and observe a claimant.  *Smolen*, 80 F.3d

23  at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

24

25  _____

26      [2]   Psychologists are considered acceptable medical sources whose opinions
    are accorded the same weight as physicians.  20 C.F.R. § 404.1513(a)(2).

27  Accordingly, for ease of reference, the court will refer to Dr. Townsend as a

28  physician.

6

1    Nevertheless, the ALJ is not bound by the opinion of the treating physician.

2  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

3  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

4  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

5  opinions, the ALJ must provide specific and legitimate reasons supported by

6  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

7  clear and convincing reasons supported by substantial evidence in rejecting the

8  uncontradicted opinion of an examining physician, *Bayliss v. Barnhart*, 427 F.3d

9  1211, 1216 (9th Cir. 2005), and specific and legitimate reasons supported by

10 substantial evidence in rejecting the contradicted opinions of examining

11 physicians, *Lester*, 81 F.3d at 830-31.  The opinion of a non-examining physician,

12 standing alone, cannot constitute substantial evidence.  *Widmark v. Barnhart*, 454

13 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th

14 Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

15    On March 18, 2009, Dr. Townsend examined plaintiff.  Dr. Townsend

16 observed, inter alia, that plaintiff listened to instructions, was oriented to time,

17 place, person, and purpose for the evaluation, had organized thinking, and had

18 adequate attention.  AR at 261-62.  But Dr. Townsend also observed that plaintiff

19 had a depressed mood, his thinking was limited in complexity, his immediate

20 memory was poor, his intellectual functioning was in the low average range, and

21 he had an IQ score of 74.  *Id.* at 262-63.  Dr. Townsend diagnosed plaintiff with a

22 depressive disorder with anxiety and a Global Assessment of Functioning

23 ("GAF")[3] score of 50.  *Id.* at 264.

24

25

26    [3]   A GAF score is the clinician's opinion of the individual's overall level of
   functioning.  A GAF score of 41-50 indicates "[s]erious symptoms OR any serious
27 impairment in social, occupational, or school functioning."  Am. Psychiatric
   Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000).
28

On April 14, 2009, Dr. G. Johnson, a state agency physician, reviewed the evidence and concluded that plaintiff had moderate limitations with regard to the ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention; perform activities within a schedule; complete a normal work day; interact appropriately with the general public; and respond appropriately to changes in the work setting. *Id.* at 227-29.

The ALJ provided three reasons for rejecting Dr. Townsend's opinion.[4] None were clear and convincing.

First, the ALJ noted that plaintiff failed to obtain mental health treatment. *Id.* at 21. Specifically, plaintiff was not taking any psychotropic medication, was never hospitalized, and did not have on-going psychiatric treatment. *Id.* But a "[f]ailure to seek treatment is not a substantial basis on which to conclude that a claimant's mental impairment is not severe." *Allen v. Comm'r*, No. 11-16628, 2012 WL 5857269, at *2 (9th Cir. Nov. 19, 2012); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."). Moreover, plaintiff had a good reason for failing to seek treatment. *Cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). As the record indicates, plaintiff did not have the financial resources for proper medication and treatment. AR at 275, 281.

Second, the ALJ stated that Dr. Townsend's diagnosis was inconsistent with her examination findings that plaintiff had organized thinking, adequate remote

---

[4] Plaintiff does not argue that the ALJ improperly rejected Dr. Johnson's opinion. Further, Dr. Johnson's opinion is based solely on Dr. Townsend's examination.

1   memory, fair insight/judgment, adequate attention, and fair general fund of

2   information. *Id.* at 21. Although it may be a valid reason to reject an opinion

3   when the examination findings are inconsistent with a conclusion, *see Johnson v.*

4   *Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995), here, it is unclear that Dr.

5   Townsend's examination findings, as a whole, were inconsistent with her

6   diagnosis. For example, although Dr. Townsend found that plaintiff had adequate

7   remote memory, she also found that plaintiff's immediate memory was low. *Id.* at

8   262. And while Dr. Townsend found that plaintiff had organized thinking, she

9   also found that his thinking was limited in complexity and details. *Id.* Further,

10  Dr. Townsend noted that plaintiff was depressed, his comprehension and judgment

11  for simple practical situations was below average, and he had an IQ of 74. *Id.* at

12  261-63. Thus, the ALJ's reasoning is not supported by substantial evidence.

13      Finally, the ALJ determined that Dr. Townsend's opinion conflicted with

14  that of plaintiff's treating physician, Dr. Tarcisio Diaz, who opined that plaintiff

15  was capable of low stress work. Even assuming that Dr. Diaz was correct, his

16  opinion is not substantial evidence that plaintiff's mental impairment was not

17  severe. Dr. Diaz did not opine that plaintiff only had mild limitations or his

18  impairment was not severe. Plaintiff may have had moderate limitations, and thus

19  a severe impairment, but still have been capable of low stress work. *See Hoopai v.*

20  *Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (noting that a step two finding of a

21  severe impairment "only raises a prima facie case of a disability" and is "not

22  dispositive of the step-five determination"). Further, Dr. Townsend is a

23  psychologist while Dr. Diaz is an endocrinologist. As the ALJ implicitly agrees

24  elsewhere in his opinion (*see* AR at 22), generally, the opinion of a specialist is

25  given more weight. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001)

26  (noting that the agency generally gives more weight to specialists than to the

27  opinion of a medical source who is not a specialist).

28

9

1    Accordingly, the ALJ erred at step two because he failed to provide clear

2    and convincing reasons supported by substantial evidence in rejecting the opinion

3    of Dr. Townsend.

4    **B.    The ALJ Failed to Provide Specific and Legitimate Reasons for**

5         **Rejecting the Treating Physician's Opinion**

6        Plaintiff contends that the ALJ improperly rejected the opinion of his

7    treating endocrinologist, Dr. Diaz.  Pl. Mem. at 13-14.  As discussed above, the

8    ALJ must provide specific and legitimate reasons for rejecting the contradicted

9    opinion of a treating physician.  *See Smolen*, 80 F.3d at 1285.  Plaintiff argues that

10   the ALJ failed to provide specific and legitimate reasons for discounting Dr.

11   Diaz's opinion.  *Id.*  The court agrees.

12       **1.    Dr. Tarcisio Diaz**

13       Dr. Diaz, an endocrinologist, treated plaintiff from April 11, 2007 through

14   the date of the decision.  AR at 281.  Dr. Diaz diagnosed plaintiff with insulin

15   dependent type I diabetes mellitus and diabetic neuropathy.  *Id.* at 221, 281.  Dr.

16   Diaz's findings include:  muscle weakness at plaintiff's arms and legs; frequency

17   of urination; hypoglycemic attacks; fatigue; blurred vision; excessive thirst;

18   sensitivity to light, heat, or cold; and difficulty thinking and concentrating.  *Id.* at

19   219-20, 281.  Dr. Diaz treated plaintiff with insulin by injection but plaintiff

20   experienced the side effect of hypoglycemic episodes.  *Id.* at 221, 281.  Dr. Diaz

21   also observed that plaintiff was depressed.  *Id.* at 223, 281.

22       In a Diabetes Mellitus Impairment Questionnaire dated February 19, 2009

23   (the "Questionnaire") and a letter dated July 13, 2010, Dr. Diaz opined that in an

24   eight-hour work day, plaintiff had the RFC to sit for four hours and stand for one

25   hour, but restricted plaintiff from sitting, standing, or walking continuously.  *Id.* at

26   222, 281.  Dr. Diaz also restricted plaintiff from pulling, pushing, kneeling,

27

28

1  bending, stooping, temperature extremes, humidity, heights, and fumes. *Id.* at 224,

2  281

3         **2.     Examining and State Agency Physicians**

4         On August 29, 2008, Dr. Kristof Siciarz, examined plaintiff. *Id.* at 196-99.

5  Dr. Siciarz did not review any medical records. *Id.* at 198. Dr. Siciarz observed,

6  among other things, that plaintiff had normal motor strength, sat comfortably, and

7  had a gait within normal limits. *Id*. at 197-98. Based on the examination, Dr.

8  Siciarz opined that plaintiff could: push, pull, lift, and carry fifty pounds

9  occasionally and twenty-five pounds frequently; and stand and walk six hours out

10 of an eight-hour day. *Id.* at 199. Dr. Siciarz opined that plaintiff had no further

11 restrictions. *Id.*

12        On September 16, 2008, Dr. S. Schechtel, a state agency physician,

13 reviewed Dr. Siciarz's opinion and completed a Physical RFC Assessment. *Id.* at

14 200-06. Dr. Schectel agreed with Dr. Siciarz's opinion. *Id.*

15        **3.     The ALJ's Findings**

16        The ALJ concluded that plaintiff had the RFC to perform light work without

17 restriction.[5] *Id*. at 21. In reaching that determination, the ALJ gave less weight to

18 Dr. Diaz's opinion because it was inconsistent with the medical records, there was

19 a lack of objective testing to support the opinion, and he contradicted himself. *Id.*

20 at 22. The ALJ gave no weight to the opinions of Dr. Siciarz and Dr. Scott,

21 because Dr. Siciarz "is only a board eligible internist" whose opinion was not

22 supported by the medical record, and because Dr. Scott's opinion was only based

23

24        [5]   "Light work involves lifting no more than 20 pounds at a time with frequent

25 lifting or carrying of objects weighing up to 10 pounds. Even though the weight
   lifted may be very little, a job is in this category when it requires a good deal of

26 walking or standing, or when it involves sitting most of the time with some

27 pushing and pulling or arm or leg controls." 20 C.F.R. § 404.1567(b).

28                                       11

1    on Dr. Siciarz's examination.  *Id.*  The ALJ erred because he failed to provide

2    specific and legitimate reasons for rejecting Dr. Diaz's opinion.

3          First, the ALJ rejected Dr. Diaz's opinion on the basis that it was

4    inconsistent with the medical records.  *Id.*  Specifically, the ALJ noted that

5    although plaintiff had elevated glucose levels, he "repeatedly reported 'feeling ok'

6    with no complaints."  *Id.*  Although inconsistency with the medical record may be

7    a specific and legitimate reason for rejecting a physician's opinion, in this

8    instance, it is not.  *See Tonapetyan v. Halter*, 242 F.3d 1144,1149 (9th Cir. 2001).

9    The ALJ correctly noted that plaintiff reported "feeling ok" or "doing ok" on

10   several occasions.  *See* AR at 246, 249, 251, 253, 271.  But reports of "feeling

11   okay" or "doing okay" do not negate Dr. Diaz's findings.  They are vague

12   statements that do not convey much information and do not suggest that plaintiff

13   was no longer experiencing symptoms.  Moreover, the ALJ is incorrect that

14   plaintiff made no complaints when he said that he was "ok."  On one of the

15   occasions plaintiff reported being "ok," plaintiff also reported that he was

16   sometimes dizzy.  *Id.* at 246.  On another such occasion, Dr. Diaz found symptoms

17   of neuropathy.  *Id.* at 271.  Thus, plaintiff's reports of "feeling ok" are not

18   necessarily inconsistent with Dr. Diaz's opinion.

19         Second, the ALJ also cited the lack of objective studies confirming the

20   diabetic neuropathy diagnosis as a basis for rejecting Dr. Diaz's opinion.  *Id.* at 22.

21   But nerve conduction studies and electromyography are rarely needed to diagnose

22   neuropathy.  *See* http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/#diagnosis.

23   Instead, physicians typically diagnose neuropathy on the basis of a patient's

24   symptoms and a physical examination.  *See id.*; http://www.mayoclinic.com/

25   health/diabetic-neuropathy/DS01045/DSECTION=tests-and-diagnosis.  Thus, the

26   lack of studies is not a legitimate reason for giving Dr. Diaz's opinion less weight.

27

28                                          12

1    Finally, the ALJ stated that Dr. Diaz contradicted himself when he stated

2    that plaintiff was capable of low stress jobs.  *Id.*  Again, it is unclear that Dr. Diaz

3    contradicted himself.  In the Questionnaire, Dr. Diaz indicated that plaintiff was

4    only capable of tolerating low stress at work due to his depression.  *Id.* at 223.

5    The response was not an opinion that plaintiff could perform all low stress jobs,

6    but instead, from a non-exertional perspective, plaintiff was limited to low stress

7    work.  Even if Dr. Diaz's response was interpreted as inconsistent with his earlier

8    response that plaintiff was "depressed, unable to work" (*id.*), the inconsistency

9    solely applies to the mental limitations.  Moreover, Dr. Diaz is an endocrinologist

10   and to the extent that he provided inconsistent opinions regarding plaintiff's

11   mental impairments, it should have no bearing on his opinion regarding plaintiff's

12   physical limitations.

13   Accordingly, the ALJ failed to cite specific and legitimate reasons

14   supported by substantial evidence for rejecting the opinion of Dr. Diaz regarding

15   plaintiff's physical limitations.

16   **C.   The ALJ Improperly Discounted Plaintiff's Credibility**

17   Plaintiff argues that the ALJ improperly discounted his credibility.  Pl.

18   Mem. at 14-17.  The court agrees.

19   An ALJ must make specific credibility findings, supported by the record.

20   SSR 96-7p.  To determine whether testimony concerning symptoms is credible, an

21   ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

22   36  (9th Cir. 2007).  First, an ALJ must determine whether a claimant produced

23   objective medical evidence of an underlying impairment "'which could reasonably

24   be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

25   *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

26   is no evidence of malingering, an "ALJ can reject the claimant's testimony about

27

28                                      13

the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 22.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.  Here, the ALJ discounted plaintiff's credibility because of: (1) his inconsistent statements about his education; (2) his failure to seek treatment; and (3) his non-compliance with his treatment plan.  *Id.*  None of these reasons are clear and convincing.

First, the ALJ correctly noted that plaintiff made inconsistent statements about his education background.  *Id*. at 22.  In his application, plaintiff reported that he completed school through the tenth grade.  *Id.* at 22, 148.  Plaintiff represented to others, including the ALJ, that he completed high school and earned a diploma.  *Id*. at 65, 197, 261; *see also id*. at 108 (plaintiff's attorney represented that he earned a high school diploma).  But this inconsistency regarding plaintiff's education is minor and inconsequential.  *See Gonzalez v. Astrue*, 253 Fed. Appx. 654 (9th Cir. 2007) (holding that an inconsistency relating to claimant's education was minor and not material); *Rocha v. Astrue*, No. 09-0856,2010 WL797160, at *5 (C.D. Cal. Mar. 5, 2010) (finding that minor inconsistencies in daily activities were minor and did not impugn claimant's credibility).

14

The second and third reasons are similarly not clear and convincing.  Nor are they supported by substantial evidence.  An inadequately explained failure to seek treatment and non-compliance with a treatment plan may be valid reasons for an adverse credibility finding.  *Orn*, 495 F.3d at 638.  But in this instance, plaintiff had a good reason for not attending diabetic clinics or meetings and for not complying with his treatment plan, namely, plaintiff did not have the financial resources for proper medication and treatment.  *See* AR at 275, 281.  Indeed, plaintiff's treatment notes indicate that he stopped taking his insulin because he ran out of samples.  *Id.* at 250.  "Disability payments may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); *accord Orn*, 495 F.3d at 638.

Accordingly, the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility.

## V.

## <u>REMAND IS APPROPRIATE</u>

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were

1  properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96;

2  *Harman*, 211 F.3d at 1179-80.

3          Here, as set out above, remand is required because the ALJ erred in failing

4  to properly evaluate Dr. Townsend's opinion at the step two inquiry, erred in

5  failing to properly consider Dr. Diaz's opinion, and erred in discounting plaintiff's

6  credibility.  On remand, the ALJ shall:  (1) at the step two inquiry, reconsider Dr.

7  Townsend's opinion, and either credit her opinion and find that plaintiff has a

8  severe mental impairment, or provide clear and convincing reasons supported by

9  substantial evidence for rejecting it; (2) reconsider Dr. Diaz's opinion and either

10  credit his opinion or provide specific and legitimate reasons supported by

11  substantial evidence for rejecting it; and (3) reconsider plaintiff's subjective

12  complaints and either credit his testimony or provide clear and convincing reasons

13  supported by substantial evidence for rejecting them.  The ALJ shall then proceed

14  through steps two, three, four and five to determine what work, if any, plaintiff is

15  capable of performing.

16                                          **VI.**

17                                    **CONCLUSION**

18          IT IS THEREFORE ORDERED that Judgment shall be entered

19  REVERSING the decision of the Commissioner denying benefits, and

20  REMANDING the matter to the Commissioner for further administrative action

21  consistent with this decision.

22

23

24  DATED: December 12, 2012                    _____

25                                          SHERI PYM
                                            United States Magistrate Judge

26

27

28                                          16